GORLICK, KRAVITZ & LISTHAUS, P.C.
Andrew A. Gorlick (AG8707)
Isaac Glovinsky (IG1790)
17 State Street, 4th Floor
New York, New York 10004
agorlick@gkllaw.com
iglovinsky@gkllaw.com
Tel. (212) 269-2500
Fax (212) 269-2540
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MASON TENDERS DISTRICT COUNCIL OF            :
GREATER NEW YORK, MASON TENDERS             :
DISTRICT COUNCIL WELFARE FUND, PENSION      :
FUND, ANNUITY FUND, TRAINING FUND, HEALTH   :
AND SAFETY FUND, and DOMINICK GIAMMONA, as  :
FUNDS' CONTRIBUTIONS/DEFICIENCY MANAGER,    :
                                            :
                    Plaintiffs,             :        **COMPLAINT**
                                            :
            -against-                       :
                                            :
EXTERIOR WALL AND BUILDING CONSULTANTS,     :
INC., CONSTRUCTION AND REALTY SERVICES GROUP :
INC., CONSTRUCTION REALTY SAFETY GROUP INC., :
DOMANI CONSULTING, INC., and DOMANI         :
INSPECTION SERVICES, INC.,                  :
                                            :
                    Defendants.             :
                                            :
------------------------------------------------------------------X

Plaintiffs Mason Tenders District Council of Greater New York (the "Union"), Mason

Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, Health and

Safety Fund, and Dominick Giammona, in his fiduciary capacity as Funds'

Contributions/Deficiency Manager (the "Funds") (collectively, "Plaintiffs"), by and through their

attorneys, Gorlick, Kravitz & Listhaus, P.C., as and for their Complaint, respectfully allege as

follows:

## NATURE OF THE ACTION AND JURISDICTION

1.      This is a civil action brought, *inter alia*, pursuant to §§ 502(a)(2) and (3) and 515 of the Employee Retirement Income Security Act ("ERISA"), as amended (29 U.S.C. §§ 1132(a)(3) and 1145), and § 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185) (the "Taft-Hartley Act"), by Plaintiffs for breach of contract, injunctive relief, and other equitable relief under ERISA.

2.      This Complaint alleges that by failing, refusing, or neglecting to comply with specific statutory and contractual obligations, Defendant Exterior Wall and Building Consultants, Inc. ("Exterior Wall") violated one or more collective bargaining agreements, the respective trust agreements of the Funds, the Taft-Hartley Act, and ERISA.

3.      This Complaint also alleges that Defendants Construction and Realty Services Group, Inc. ("C&R"), Construction Realty Safety Group Inc. ("CRSG"), Domani Consulting, Inc. ("Domani Consulting") and Domani Inspection Services, Inc. ("Domani Inspection") (collectively, the "Related Domani Companies") are alter-egos, successors to, and/or a single employer with Exterior Wall and one another.  As such the Related Domani Companies are all bound by Exterior Wall's collective bargaining agreement and are jointly and severally liable for fringe benefit contributions and other money owed pursuant to the agreement (collectively, the Related Domani Companies and Exterior Wall are the "Defendant Corporations").

4.      This Complaint further alleges that either twenty-two specific employees of the Defendant Corporations were working within the jurisdiction of the agreements, in which case substantial fringe benefit contributions and other monies are owed or Exterior Wall deliberately defrauded the Funds by making contributions intended to induce the Funds to provide valuable, below-cost benefits to Defendants' allegedly ineligible employees.

2

5.      Jurisdiction of this Court is invoked under the following statutes:

       a.      ERISA § 502(e)(1) and (f) (29 U.S.C. § 1132(e)(1) and (f));

       b.      Taft-Hartley Act § 301 (29 U.S.C. § 185);

       c.      28 U.S.C. § 1331 (federal question);

       d.      28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce); and

       e.      28 U.S.C. § 1367 (supplemental jurisdiction).

6.      Venue properly lies in this district under ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) and Taft-Hartley Act § 301 (29 U.S.C. § 185(c)) because the Funds are administered in this district and the contractual breach took place in this district.  Service of process may be made the Defendants in any other district in which they may be found pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)).

## PARTIES

7.      The Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Taft-Hartley Act § 302(c)(5) and (c)(6) (29 U.S.C. § 186(c)(5) and (c)(6)).  The Funds are also employee benefit plans within the meaning of ERISA §§ 3(1), 3(2), 3(3) and 502(d)(1) (29 U.S.C. §§ 1002(1)-(3) and 1132(d)(1)), and multi-employer plans within the meaning of ERISA §§ 3(37) and 515 (29 U.S.C. §§ 1002(37) and 1145).  The Funds are authorized to maintain suits as independent legal entities under ERISA § 502(d)(1) (29 U.S.C. § 1132(d)(1)).  The Funds' purpose is to provide fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the building and construction industry and the Union.  The Funds are third-party

beneficiaries to such collective bargaining agreements as collectors and trustees of employer contributions made pursuant to these collective bargaining agreements.  The Funds maintain their offices and are administered at 520 Eighth Avenue, Suite 600, New York, New York 10018.

8.     Plaintiff Dominick Giammona ("Giammona") is the Funds' Contributions/Deficiency Manager and is a fiduciary of the Funds within the meaning of ERISA §§ 3(21) and 502 (29 U.S.C. §§ 1002(21) and 1132).  Giammona brings this action in his fiduciary capacity.

9.     The Union is a labor organization within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185) and it represents employees in an industry affecting commerce as defined by Taft-Hartley Act § 501 (29 U.S.C. § 142) and ERISA § 3(4) (29 U.S.C. § 1002(4)).  The Union maintains its offices and is administered at 520 Eighth Avenue, Suite 650, New York, New York 10018.

10.     Exterior Wall is a for-profit domestic corporation doing business in the State of New York as an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185).  Exterior Wall's principal office is located at 226 East Merrick Road, Valley Stream, NY 11580.

11.     C&R is a for-profit domestic corporation doing business in the State of New York as an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185).  C&R's principal office is located at 226 East Merrick Road, Valley Stream, NY 11580.

12.     CRSG is a for-profit domestic corporation doing business in the State of New York as an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185).  CRSG's principal office is located at 226 East Merrick Road, Valley Stream, NY 11580.

13.     Domani Consulting is a for-profit domestic corporation doing business in the State of New York as an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185).  Domani Consulting's principal office is located at 226 East Merrick Road, Valley Stream, NY 11580.

14.     Domani Inspection is a for-profit domestic corporation doing business in the State of New York as an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185).  Domani Inspection's principal office is located at 226 East Merrick Road, Valley Stream, NY 11580.

## FACTS COMMON TO ALL CAUSES OF ACTION

### The Collective Bargaining Agreements

15.     Exterior Wall was and is a member of the Building Contractors Association, Inc. ("BCA").  The BCA is the exclusive bargaining agent for all its members for the purposes of collective bargaining with the Union. Due to Exterior Wall's membership, Exterior Wall consented to become bound by collective bargaining agreements negotiated by the BCA and the Union.

16.     The BCA and the Union entered into a collective bargaining agreement covering

5

the time period July 1, 2010 through June 30, 2014 (the "2010 Agreement").

17.     The BCA and the Union entered into a collective bargaining agreement covering the period July 1, 2014 through June 30, 2018 (the "2014 Agreement") (collectively, the "Agreements").

18.     Due to its BCA membership, Exterior Wall became bound by the Agreements. The Agreements, *inter alia*, require Exterior Wall to pay and/or submit the required monetary contributions and/or reports to the Funds and remit dues checkoffs and Political Action Committee ("PAC") contributions deducted from the wages paid to employees who authorize said deductions in writing to the Union for each hour of work performed by Exterior Wall's employees within the trade and geographical jurisdictions of the Union and also require that Exterior Wall permit the Funds and/or their designated representatives to conduct audits of Exterior Wall's books and records.

19.     The Agreements require that Exterior Wall make contributions to the Funds for all hours worked by its employees working within the jurisdiction of the Agreements.

20.     The Mason Tenders District Council Welfare Fund's ("Welfare Fund") benefit and eligibility rules are structured to provide health coverage and other related benefits based on the assumption that employers will contribute to the Welfare Fund for all hours worked within the jurisdiction of the Agreements as required by the Agreements.

21.     Because employers are obligated to contribute to the Welfare Fund for all hours worked within the jurisdiction of the Agreements, the Welfare Fund is able to provide health coverage benefits even when participants are only able to obtain less than full-time work.  In effect, employees working full time within a given period subsidize employees working less than full time so that more participants can maintain continuous coverage through the stronger and

6

slower periods of their work in the construction industry.

22.     At all relevant times, the Welfare Fund's Summary Plan Description provided that laborers became eligible for six months of health coverage if they worked for 400 hours within the jurisdiction of the Agreements during a six month period from May through October or from January through June.  This is equivalent to working between 15 and 16 hours a week, every week, not including holidays, sick days or vacation.

### The Audit

23.     Auditors for the Funds conducted an audit of Exterior Wall and the Related Domani Companies' books and records for the time period April 1, 2011 through September 30, 2014 (the "Audit").

24.     The Audit found that Exterior Wall reported and made fringe benefit contributions to the Funds for 54,403.5 hours of work performed by twenty-two employees with site safety and/or fire safety manager job titles that, upon information and belief, Exterior Wall claims were not working within the jurisdiction of the Agreements (collectively, the "Alleged Site Managers").

25.     Upon information and belief, Exterior Wall told the Funds' auditors that in its opinion, it was not required to contribute to the Funds in connection with the Alleged Site Managers' work and that it made these contributions to the Funds "solely for benefit purposes."

26.     Rather than contribute to the Funds for all hours worked by the Alleged Site Managers, Exterior Wall only reported sufficient hours to induce the Funds to provide benefits to the Alleged Site Managers by reporting sufficient hours each week, often either 16 or 24, so that the Alleged Site Managers would meet or exceed the 400 hour health coverage eligibility threshold.

27.     Twenty of the twenty-two Alleged Site Managers became eligible for health coverage through the Mason Tenders District Council Welfare Fund during the audit period due to contributions made by Exterior Wall.  The remaining two employees either declined to enroll or did not work long enough or have sufficient hours reported to obtain coverage.

28.     The Audit found that Exterior Wall underreported the number of hours of work performed by the Alleged Site Managers by 24,384 hours.

29.     Upon information and belief, the Alleged Site Managers actually performed work covered by the collective bargaining agreement.  Despite their titles, they were functionally working foremen and/or laborers covered by the Agreements.

30.     For example, Article IV Section 1(a) of the Agreements provide, among other things, that "the erection and maintenance, of safety equipment, barricades and flags" is within the jurisdiction of the Agreements.

31.     Article IV Section 1(d) of the Agreements provide, among other things, that "[i]nstallation and maintenance of fire preventative equipment, including fire extinguishers on the job site" is within the jurisdiction of the Agreements.

32.     On the basis of Exterior Wall's reports and contributions in connection with the Alleged Site Managers' work during the April 1, 2011 through September 30, 2014 audited period and the health and other benefits received by these twenty employees due to the contributions, Exterior Wall is estopped from denying that the twenty employees were performing covered work.

33.     The Audit found that Exterior Wall failed to remit required contributions and submissions for 144 additional hours of covered work during the April 1, 2011 through September 30, 2014 audit period performed by Exterior Wall employees who were not Alleged

Site Managers.

34.     The Audit found that the Related Domani Companies collectively failed to remit required contributions and submissions for 5,661.5 hours of covered work for the time period April 1, 2011 through September 30, 2014.

## Defendant Corporations' Relationships

35.     The Defendant Corporations are commonly owned and operated businesses in the construction industry.

36.     Matthew Caruso "Caruso" is the controlling corporate officer of the Defendant Corporations.

37.     As employers with integrated operations Defendant Corporations are alter-egos and/or a single employer due to their common control, operations, lines of business, staff, and their centralized labor management.

38.     Although the Defendant Corporations also share other locations, Defendant Corporations' headquarters are at 226 East Merrick Road, Valley Stream, NY 11580.

39.     The Defendant Corporations' operations are integrated.

40.     For example, according to an article published in the July 2014 edition of the New England Real Estate Journal, Caruso told the New England Real Estate Journal that the Defendant Corporations "combine our services to provide [] centralized safety responsibility."

41.     The Defendant Corporations often work on the same construction projects.

42.     The Defendant Corporations' labor management is centralized.

43.     For example, C&R General Superintendent Michael Stuto supervises, organizes and staffs all field work for CRSG and Exterior Wall, and is responsible for resolving all field issues with personnel and unions.

44.     The Defendant Corporations share a single website, http://www.crs-group.com.

45.     The Defendant Corporations share a telephone number 516-256-0335 and a single fax number 516-256-0335.

46.     The Defendant Corporations share employees and/or report the same persons as employees of different companies for different payroll purposes.

47.     Even though Exterior Wall reported that the Alleged Site Managers were its own employees to the Funds, at least some of the Alleged Site Managers are listed as employees of the Related Domani Companies for other purposes.

48.     For instance, Exterior Wall contributed to the Funds due to Alleged Site Manager Michael Stuto's work even though he is listed as a C&R Employee on the Defendants' website.

49.     Exterior Wall contributed to the Funds due to Alleged Site Manager John Asaro's work even though he is listed as a C&R Employee on the Defendants' website.

50.     Exterior Wall contributed to the Funds due to Alleged Site Manager Anthony St. Jeanos' work even though he identifies himself as a CRSG employee on LinkedIn.

51.     Exterior Wall contributed to the Funds due to Michael Orofino's work even though he identifies himself as a CRSG employee on LinkedIn.

52.     The Related Domani Companies' employees who work within the jurisdiction of the Agreements form an appropriate bargaining unit.

53.     The Related Domani Defendants are bound by the Agreements because their performance of covered work is a mere technical change in the combined companies' operations intended to avoid Exterior Wall's collective bargaining obligations.

54.     The Related Domani Defendants are also bound by the collective bargaining agreement because their contributions to the Funds in connection with the Alleged Safety

Managers and the Related Domani Defendants' other employees were intended to obtain the benefits of Exterior Wall's Agreements with the Union without assuming the corresponding obligations.

55.    The Related Domani Defendants are also bound to the Agreements because they adopted the Agreements by conduct.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (FUNDS' CLAIM AGAINST EXTERIOR WALL FOR BREACH OF CONTRACT)

56.    The Funds repeat and re-allege each and every allegation contained in Paragraphs 1 through 55 of this Complaint, as if fully set forth herein.

57.    As a result of work performed by individuals reported as employees of Exterior Wall, pursuant to the Agreements, there became due and owing to the Funds from Exterior Wall the amount of $629,455.21 as and for fringe benefit contributions for the audited time period April 1, 2011 through September 30, 2014.   This sum consists of $622,994.38 owed in connection with the Alleged Site Managers and $6,460.83 owed in connection with other employees' work.

58.    Exterior Wall has not paid any portion of these fringe benefit contributions contractually due to the Funds, although all fringe benefit contributions have been duly demanded and the Funds have been damaged in the amount of $629,455.21.

59.    The failure, refusal, or neglect of Exterior Wall to make the required contributions to the Funds violates the Agreements, with respect to which the Funds are third-party beneficiaries.

60.    Accordingly, Exterior Wall is liable to the Funds as and for fringe benefit contributions in the amount of $629,455.21 for the audited time period April 1, 2011 through September 30, 2014, plus interest from the date payment was due until the date the contributions

are paid at the rate set by the Agreements.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (FUNDS' CLAIM AGAINST EXTERIOR WALL FOR BREACH OF ERISA OBLIGATIONS)

61.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 60 of this Complaint, as if fully set forth herein.

62.     ERISA § 515 (29 U.S.C. § 1145) requires that employers pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements.

63.     Exterior Wall failed to pay the required fringe benefit contributions and/or submit the required reports to the Funds as required by the Agreements.  Such failure to make payments violates ERISA § 515 (29 U.S.C. § 1145).

64.     ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)) provides that, upon a finding of an employer violation of ERISA § 515 (29 U.S.C. § 1145), the Court shall award to a fund the unpaid fringe benefit contributions, plus statutory damages and interest on the unpaid and/or untimely-paid principal, both computed at the rate provided for under the fund's plan or, if none, as set forth in United States Internal Revenue Code § 6621 (26 U.S.C. § 6621), together with reasonable attorneys' fees and costs and disbursements incurred in the action.

65.     The Agreements also provide for interest on delinquent fringe benefit contributions at the rate prescribed under § 6621 of Title 26 of the United States Code, liquidated damages in the amount equal to the interest, and reasonable costs and attorneys' fees.

66.     Article VI, Section § 22(e) of the 2010 Agreement provides, in relevant part:

> If after an audit of its books and records the Employer is found to be delinquent in the payment of fringe benefit contributions to the Trust Funds… then the Employer shall pay, in addition to the delinquent fringe benefit contributions, interest on the unpaid amounts from the date due until the date of payment at the rate prescribed under section 6621 of Title 26 of the United States

Code.  In the event the Trust Funds… bring an action to recover the interest on delinquent fringe benefit contributions, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

67.     Accordingly, Exterior Wall is liable to the Funds as and for payment of any and all required monetary contributions and/or submission of reports to the Funds, and is liable for an additional amount of statutory damages, interest on the unpaid and/or untimely-paid principal, and reasonable attorneys' fees, costs and disbursements incurred in this action, pursuant to ERISA § 502 (29 U.S.C. § 1132).

### AS AND FOR A THIRD CLAIM FOR RELIEF
### (UNION'S CLAIM AGAINST EXTERIOR WALL FOR BREACH OF CONTRACT FOR FAILURE TO REMIT DUES CHECKOFFS AND PAC CONTRIBUTIONS)

68.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 67, as if fully set forth herein.

69.     Pursuant to the Agreements, including Article VI Section 3 of the 2010 Agreement, Exterior Wall was obligated, *inter alia*, to deduct dues checkoffs from the wages paid to its employees who perform covered work within the trade and geographical jurisdictions of the Agreements who authorized such deduction in writing and was obligated to remit these dues checkoffs to the Union.

70.     Pursuant to the Agreements, including Article VI Section 11 of the 2010 Agreement, Exterior Wall was obligated, *inter alia*, to deduct PAC contributions from the wages paid to its employees who perform covered work within the trade and geographical jurisdictions of the Agreements who authorized such deduction in writing and was obligated to remit these deductions to the Union.  The Union is the PAC's authorized collection agent.

71.     As a result of work performed by employees of Exterior Wall who authorized said

13

deductions in writing, Exterior Wall failed to deduct and/or remit $48,946.34 as and for dues checkoffs and PAC contributions for the audited time period April 1, 2011 through September 30, 2014.  This sum consists of $48,663.20 owed in connection with the twenty alleged safety managers and $283.14 owed in connection with its other employees' work.

72.     Exterior Wall has not paid these dues checkoffs and PAC contributions contractually due to the Union, although all dues checkoffs and PAC contributions have been duly demanded and the Union has been damaged in the amount of $48,946.34.

73.     The failure, refusal, or neglect of Exterior Wall to remit the dues checkoffs and PAC contributions violates the Agreements.

74.     Accordingly, Exterior Wall is liable to the Union as and for unremitted dues checkoffs and PAC contributions in the amount of $48,946.34 for the audited time period of April 1, 2011 through September 30, 2014, plus interest from the date payment was due until the date paid at the New York State statutory rate of nine percent (9%) per year pursuant to Civil Practice Law and Rules ("C.P.L.R.") § 5004.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR COURT COSTS AND ATTORNEYS' FEES AGAINST EXTERIOR WALL)

75.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 74 of this Complaint, as if fully set forth herein.

76.     The Agreements require that Exterior Wall, *inter alia*, pay the reasonable costs and attorneys' fees incurred in bringing this action if it is found to be delinquent in the payment of fringe benefit contributions to the Funds.  Article VI Section 22(e) of the 2010 Agreement provides that in the event the Funds bring an action to recover the interest on delinquent fringe benefit contributions, the Employer shall be obligated to pay the reasonable costs and attorneys

fees incurred in bringing said action.

77.     ERISA § 502(g) also provides for the recovery of attorneys' fees in actions seeking the recovery of delinquent contributions. *See* 29 U.S.C. § 1132(g).

78.     The Funds have brought this action to recover, among other things, $629,455.21 in delinquent fringe benefit contributions from Exterior Wall alone.

79.     Accordingly, Exterior Wall is liable to the Funds as and for the reasonable costs and attorneys' fees incurred in bringing this action.

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR AUDIT COSTS AGAINST EXTERIOR WALL)

80.     The Funds repeat and re-allege each and every allegation contained in paragraphs 1 through 79 of this Complaint, as if fully set forth herein.

81.     Pursuant to the Agreements, Exterior Wall is obligated, *inter alia*, to pay the costs of the audit of its books and records if Exterior Wall is found to be substantially delinquent in the payment of fringe benefit contributions to the Funds.   Article VI Section 18(c) of the 2010 Agreement provides, in relevant part:

> If after an audit of its books and records the Employer is found to be substantially delinquent, as defined herein, in the payment of fringe benefit contributions to the Trust Funds set forth in this article of the Agreement, the Employer shall bear the Imputed cost of the audit as set forth below:

> $$\frac{\text{total audited deficiency}}{150} \times \frac{\text{number of}}{\text{months audited}} = \text{imputed cost of audit}$$

> Substantially delinquent is defined as any deficiency in the payment of fringe benefit contributions to the Trust Funds… in excess of 10% of the fringe benefit contributions paid to the Trust Funds… during the period that is the subject of the audit.

82.     Exterior Wall contributed $4,265,443.34 to the Funds during the April 1, 2011

15

through September 30, 2014 audit period.

83.     Exterior Wall is substantially delinquent in the payment of fringe benefit contributions to the Funds because its audited fringe benefit deficiency of $629,455.21 exceeds $426,544.33, which is 10% of its contributions during the audit period.

84.     Accordingly, Exterior Wall is liable to the Funds as and for the imputed audit costs in the amount of $222,954.36, calculated according to the formula set out in the Agreements.

**AS AND FOR A SIXTH CLAIM FOR RELIEF**
**(FUNDS' CLAIM FOR BREACH OF CONTRACT AGAINST EXTERIOR WALL FOR FAILURE TO POST A BOND)**

85.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 84, as if fully set forth herein.

86.     Pursuant to the terms and conditions of the Agreements, Exterior Wall is required, *inter alia*, to post and maintain a bond to guarantee payment of all fringe benefit contributions to the Funds and remittance of all dues checkoffs and PAC contributions to the Union that become due and owing.

87.     Article VI, Section 15 of the 2010 Agreement provides, in relevant part:

> The Employer shall not be required to post and maintain a bond to ensure payment of contributions to the Fringe Benefit Funds set forth in this Article of the Agreement except under the following circumstances: If after an audit of its books and records, the Employer is found to be substantially delinquent, as defined herein, in the payment of fringe benefits contributions to the Fringe Benefit Funds set forth in this Article of the Agreement, the Employer, for the life of this Agreement, shall be required to post a bond equal to the greater of either i) double the audited delinquencies, or ii) in the following amounts…

88.     Exterior Wall is substantially delinquent, as defined in the Agreements.

89.     Upon information and belief, Exterior Wall has not posted and does not currently maintain a bond, and Plaintiffs have been damaged in the amount of at least $629,455.21 by Exterior Wall's failure to pay fringe benefit contributions alone.

90.     The failure, refusal, or neglect of Exterior Wall to post and maintain the required bond constitutes a violation of the Agreements, with respect to which the Funds are third-party beneficiaries.

91.     Exterior Wall is therefore obligated, pursuant to the Agreements, to post and maintain a bond in the amount of $1,258,910.42, which is double the audited fringe benefit deficiency of $629,455.21 attributed to it.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR BREACH OF CONTRACT AGAINST THE RELATED DOMANI COMPANIES)

92.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 91, as if fully set forth herein.

93.     The Related Domani Companies are bound to the Agreements as alter-egos to and/or single employers with Exterior Wall and one another.

94.     As a result of work performed by individuals reported as employees of the Related Domani Companies, pursuant to the Agreements, there became due and owing to the Funds from the Related Domani Companies the amount of $148,292.51 as and for fringe benefit contributions for the audited time period April 1, 2011 through September 30, 2014.

95.     The Related Domani Companies have not paid any portion of these fringe benefit contributions contractually due to the Funds, although all fringe benefit contributions have been duly demanded, and the Funds have been damaged in the amount of $148,292.51.

96.     The failure, refusal, or neglect of the Related Domani Companies to make the

required contributions to the Funds violates the Agreements, with respect to which the Funds are third-party beneficiaries.

97.     Accordingly, the Related Domani Companies are liable to the Funds as and for fringe benefit contributions in the amount of $148,292.51 for the audited time period April 1, 2011 through September 30, 2014, plus interest from the date payment was due until the date the contributions are paid at the rate set by the Agreements.

**AS AND FOR AN EIGHTH CLAIM FOR RELIEF**
**(FUNDS' CLAIM AGAINST THE RELATED DOMANI COMPANIES FOR**
**BREACH OF ERISA OBLIGATIONS)**

98.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 97 of this Complaint, as if fully set forth herein.

99.     The Related Domani Companies are bound to the Agreements as alter-egos to and/or single employers with Exterior Wall and one another.

100.    ERISA § 515 (29 U.S.C. § 1145) requires that employers pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements.

101.    The Related Domani Companies failed to pay the required fringe benefit contributions and/or submit the required reports to the Funds as required by the Agreements. Such failure to make payments violates ERISA § 515 (29 U.S.C. § 1145).

102.    ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)) provides that, upon a finding of an employer violation of ERISA § 515 (29 U.S.C. § 1145), the Court shall award to a fund the unpaid fringe benefit contributions, plus statutory damages and interest on the unpaid and/or untimely-paid principal, both computed at the rate provided for under the fund's plan or, if none, as set forth in United States Internal Revenue Code § 6621 (26 U.S.C. § 6621), together with reasonable attorneys' fees and costs and disbursements incurred in the action.

103.     The Agreements also provide for interest on delinquent fringe benefit contributions at the rate prescribed under § 6621 of Title 26 of the United States Code, liquidated damages in the amount equal to the interest, and reasonable costs and attorneys' fees.

104.     Accordingly, the Related Domani Companies are liable to the Funds as and for payment of any and all required monetary contributions and/or submission of reports to the Funds, and are liable for an additional amount of statutory damages, interest on the unpaid and/or untimely-paid principal, and reasonable attorneys' fees, costs and disbursements incurred in this action, pursuant to ERISA § 502 (29 U.S.C. § 1132).

**AS AND FOR A NINTH CLAIM FOR RELIEF**
**(UNION'S CLAIM AGAINST THE RELATED DOMANI COMPANIES FOR**
**BREACH OF CONTRACT FOR FAILURE TO REMIT DUES CHECKOFFS**
**AND PAC CONTRIBUTIONS)**

105.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 104, as if fully set forth herein.

106.     The Related Domani Companies are bound to the Agreements as alter-egos to and/or single employers with Exterior Wall and one another.

107.     Pursuant to the Agreements, including Article VI Section 11 of the 2010 Agreement, the Related Domani Companies were obligated, *inter alia*, to deduct PAC contributions from the wages paid to their employees who performed work within the trade and geographical jurisdictions of the Agreements who authorized such deduction in writing and were obligated to remit these deductions to the Union.

108.     Pursuant to the Agreements, including Article VI Section 3 of the 2010 Agreement, the Related Domani Companies were obligated, *inter alia*, to deduct dues checkoffs from the wages paid to their employees who performed work within the trade and geographical jurisdictions of the Agreements who authorized such deduction in writing and were obligated to

remit these dues checkoffs to the Union.

109.    As a result of work performed by employees of the Related Domani Companies who authorized said deductions in writing, the Related Domani Companies failed to deduct and/or remit $11,583.39 as and for dues checkoffs and PAC contributions for the audited time period April 1, 2011 through September 30, 2014.

110.    The Related Domani Companies have not paid these dues checkoffs and PAC contributions contractually due to the Union, although all dues checkoffs and PAC contributions have been duly demanded and the Union has been damaged in the amount of $11,583.39.

111.    Accordingly, the Related Domani Companies are liable to the Union as and for unremitted dues checkoffs and PAC contributions in the amount of $11,583.39 for the audited time period April 1, 2011 through September 30, 2014, plus interest from the date payment was due until the date paid at the New York State statutory rate of nine percent (9%) per year pursuant to Civil Practice Law and Rules ("C.P.L.R.") § 5004.

## AS AND FOR A TENTH CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR COURT COSTS AND ATTORNEYS' FEES AGAINST THE RELATED DOMANI COMPANIES)

112.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 111 of this Complaint, as if fully set forth herein.

113.    The Related Domani Companies are bound to the Agreements as alter-egos to and/or single employers with Exterior Wall and one another.

114.    The Agreements require that the Related Domani Companies, *inter alia*, pay the reasonable costs and attorneys' fees incurred in bringing this action if it is found to be delinquent in the payment of fringe benefit contributions to the Funds.  Article VI Section 22(e) of the 2010 Agreement provides that in the event the Funds bring an action to recover the interest on

delinquent fringe benefit contributions, the Employer shall be obligated to pay the reasonable costs and attorneys fees incurred in bringing said action.

115.    ERISA § 502(g) also provides for the recovery of attorneys' fees in actions seeking the recovery of delinquent contributions. *See* 29 U.S.C. § 1132(g).

116.    The Funds have brought this action to recover, among other things, $159,875.90 in delinquent fringe benefit contributions from the Related Domani Companies alone.

117.    Accordingly, the Related Domani Companies are liable to the Funds as and for the reasonable costs and attorneys' fees incurred in bringing this action.

**AS AND FOR AN ELEVENTH CLAIM FOR RELIEF**
**(FUNDS' DEMAND FOR AN ORDER DIRECTING DEFENDANT CORPORATIONS**
**TO PERMIT AN AUDIT OF THEIR BOOKS AND RECORDS)**

118.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 117, as if fully set forth herein.

119.    The Related Domani Companies are bound to the Agreements as alter-egos to and/or single employers with Exterior Wall and one another.

120.    Pursuant to the terms and conditions of the Agreements, Defendant Corporations are required, *inter alia*, to file certain employer contribution reports with the Funds, and are further required to permit and cooperate with the Funds and/or their designated representatives in the conduct of audits of their books and records. According to Article VI, Section 18(a) of the 2010 Agreement, these records include but are not limited to, "all payroll sheets, W-2 forms, New York State Employment Reports, Insurance Company Reports and supporting checks, ledgers, general ledger, cash disbursement ledger, vouchers, 1099 forms, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, and another other items concerning payroll(s),"

as well as the same records "of any affiliate, subsidiary, alter ego, joint venture, successor or related company of the employer."

121.    Accordingly, Plaintiffs are entitled to conduct an audit of the Defendant Corporations' books and records for the period October 2014 to the Present.

### AS AND FOR A TWELFTH CLAIM FOR RELIEF
### (PLAINTIFFS' CLAIM FOR FRINGE BENEFIT CONTRIBUTIONS, DUES CHECKOFFS, PAC CONTRIBUTONS AND DAMAGES FOUND PURSUANT TO THE AUDIT OF DEFENDANT CORPORATIONS' BOOKS AND RECORDS)

122.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 121, as if fully set forth herein.

123.    The Related Domani Companies are bound to the Agreements as alter-egos to and/or single employers with Exterior Wall and one another.

124.    Pursuant to the Agreements and ERISA § 502(g), including Article VI Section 16(e) of the 2010 Agreement, if a delinquency is found after an audit of the Defendant Corporations' books and records, the Defendant Corporations are obligated, *inter alia*, to pay the outstanding contributions, interest on the unpaid contributions, liquidated damages, and attorneys' fees and costs.

125.    Pursuant to the Agreements, Defendant Corporations are also obligated, *inter alia*, to deduct dues checkoffs and PAC contributions from wages paid to employees of the Defendant Corporations performing work within the trade and geographical jurisdictions of the Union who authorize such deductions in writing.   Interest on unremitted dues checkoffs and PAC contributions accrues at the statutory rate of nine percent (9%) per year pursuant to C.P.L.R. § 5004.

126.    Accordingly, the Defendant Corporations are liable to the Funds and the Union as and for unpaid contributions, interest on the unpaid contributions, liquidated damages,

unremitted dues checkoffs and PAC contributions, and interest on the unremitted dues checkoffs and PAC contributions found due and owing pursuant to an audit of Defendant Corporations' books and records, plus attorneys' fees and costs.

### AS AND FOR A THIRTEENTH CLAIM FOR RELIEF
### (CLAIM FOR AN ORDER THAT THE DEFENDANT CORPORATIONS ARE JOINTLY AND SEVERALLY LIABLE AS A SINGLE EMPLOYER AND/OR AN ALTER EGO)

127.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 126, as if fully set forth herein.

128.    The Audit found that the Defendant Corporations collectively failed to pay $777,747.72 in fringe benefit contributions to the Funds.

129.    The Audit found that the Defendant Corporations collectively failed to deduct and/or remit $60,529.73 in dues checkoffs and PAC contributions to the Union.

130.    The Defendant Corporations are also liable for statutory damages, interest and Plaintiffs' reasonable costs and attorney's fees.

131.    The Defendant Corporations are alter egos and/or a single employer.

132.    Alter-egos and companies that are single employers are jointly and severally liable for one another's liabilities.

133.    Accordingly, Plaintiffs are entitled to an order finding all Defendant Corporations jointly and severally liable for all money owed, however characterized, from any of the Defendant Corporations to any of the Plaintiffs.

### AS AND FOR A FOURTEENTH CLAIM FOR RELIEF
### (PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS)

134.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 133, as if fully set forth herein.

135.    Pursuant to the terms and conditions of the Agreements, Defendant Corporations are required to timely pay and/or submit fringe benefit contributions and/or reports to the Funds, remit dues checkoffs and PAC contributions deducted from the wages paid employees who authorize said deductions in writing, post a bond, and permit and cooperate in the conduct of audits of their books and records.

136.    Defendant Corporations have failed to timely pay and/or submit fringe benefit contributions to the Funds for the audited time period of April 1, 2011 through September 30, 2014 and remit dues checkoffs and PAC contributions deducted from the wages paid to employees who authorize said deductions, have failed to post a bond, and are currently in breach of their obligations under the Agreements for at least the period April 1, 2011 through September 30, 2014. Defendant Corporations' prior conduct demonstrates a significant likelihood that they will continue to breach the terms of the Agreements.

137.    Plaintiffs have no adequate remedy at law to ensure that Defendant Corporations will adhere to the terms of the Agreements.

138.    The Funds will suffer immediate and irreparable injury unless Defendant Corporations, as well as their officers, agents, servants, and employees are enjoined from failing, refusing, or neglecting to pay and/or submit the required monetary contributions and/or reports to the Funds and permit and cooperate in the conduct of audits for so long as it remains obligated to do so pursuant to the Agreements.  The Union will suffer immediate and irreparable injury unless Defendant Corporations, as well as their officers, agents, servants and employees are enjoined from failing, refusing, or neglecting to remit dues checkoffs and PAC contributions deducted from the wages paid to employees who authorize said deductions in writing to the Funds for so long as it remains obligated to do so pursuant to the Agreements.  Plaintiffs will suffer

immediate and irreparable injury unless Exterior Wall, as well as its officers, agents, servants and employees are enjoined from failing, refusing, or neglecting to post a bond for so long as it remains obligated to do so pursuant to the Agreements.

139.    Accordingly, Plaintiffs request that this Court issue an injunction permanently enjoining Defendant Corporations, their officers, agents, servants, employees, and all persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise, from failing, refusing, or neglecting to pay and/or submit the required contributions and/or reports to the Funds and permit and cooperate in the conduct of audits of the Defendant Corporations for as long as they remain obligated to do so by the Agreements.  Plaintiffs request that this Court issue and injunction permanently enjoining Defendant Corporations, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from failing, refusing, or neglecting to remit dues checkoffs and PAC contributions deducted from wages paid employees who authorize said deductions in writing for so long as they remain obligated to do so pursuant to the Agreements.  Plaintiffs also request that this Court issue an injunction permanently enjoining Defendant Corporations, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from failing, refusing, or neglecting to post a bond for so long as they remain obligated to do so pursuant to the Agreements.

<u>**AS AND FOR A FIFTEENTH CLAIM FOR RELIEF**</u>
**(FUNDS' CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO ERISA**
**AGAINST DEFENDANTS)**

140.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 139, as if fully set forth herein.

141.    Pursuant to terms and conditions of the Agreements, Defendant Corporations are required to timely pay and/or submit fringe benefit contributions and/or reports to the Funds and permit and cooperate in the conduct of audits of their books and records for so long as they remain obligated to do so pursuant to the Agreements.

142.    Defendant Corporations have failed to timely pay and/or submit fringe benefit contributions to the Funds for the audited time period April 1, 2011 through September 30, 2014. Defendant Corporations are therefore currently in breach of their statutory obligations under ERISA.  Defendant Corporations' prior conduct demonstrates a significant likelihood that they will continue to breach ERISA.

143.    The Funds have no adequate remedy at law to ensure that Defendant Corporations will continue to adhere to their statutory obligations.

144.    The Funds will suffer immediate and irreparable injury unless Defendant Corporations, as well as their officers, agents, servants, and employees are enjoined from failing, refusing, or neglecting to pay and/or submit the required monetary contributions and/or reports to the Funds for so long as they remain obligated to do so pursuant to the ERISA.

145.    Accordingly, the Funds request this Court issue an injunction permanently enjoining Defendant Corporations, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from violating ERISA by failing, refusing, or neglecting to pay the required contributions and/or reports to the Funds for the term of the Agreements.

## AS AND FOR A SIXTEENTH CLAIM FOR RELIEF
### (PLAINTIFFS' CLAIM AGAINST EXTERIOR WALL FOR FRAUD UNDER 502(a)(2) AND (3)(B) OF ERISA)

146.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1

through 145, as if fully set forth herein.

147.   Upon information and belief, Exterior Wall claims it made contributions to the Funds that were not required by the Agreements for benefit purposes only, in order to cause the Funds to provide health coverage and other benefits to the Alleged Site Managers.

148.   Because Exterior Wall only contributed enough to cause the Alleged Site Managers to gain health coverage from the Funds instead of for all hours worked, Exterior Wall obtained coverage for the Alleged Site Managers at an artificially low contribution rate that would not be sustainable if all contributing employers acted similarly.

149.   When the Fund's auditors asked Exterior Wall to explain why it did not contribute for all hours worked by the Alleged Site Managers, upon information and belief Exterior Wall argued that it need not make any contributions because in its opinion the Alleged Site Managers were not performing covered work.

150.   In response to the Audit, Exterior Wall claimed that it contributed to the Funds in connection with the Alleged Site Managers for benefit purposes only.

151.   Crediting Exterior Wall's response to the Audit would permit it to fraudulently obtain below-cost health coverage for allegedly ineligible individuals and then avoid any consequences by using its own wrongdoing as a defense to any further obligation to the Funds.

152.   Crediting Exterior Wall's response to the Audit would also permit it to divert the Funds' assets to benefit allegedly ineligible individuals without consequence.

153.   If Exterior Wall is correct that the Alleged Site Managers did not perform work covered by the Agreements, then Exterior Wall believed all along that the Alleged Site Managers did not perform covered work during the April 1, 2011 to September 30, 2014 audit period.  This belief would be consistent with Exterior Wall's failure to contribute for all hours worked.

154.   If Exterior Wall is correct that the Alleged Site Managers did not perform work covered by the Agreements then Exterior Wall intended to cause the Funds to provide health coverage and other benefits to ineligible employees at an artificially low cost, thereby defrauding the Funds.

155.   The Funds reasonably relied on Exterior Wall's representations, through its contribution history, that the Alleged Site Managers were performing covered work because Exterior Wall was bound by the Agreements, some of the Alleged Site Managers had long histories of doing work covered by the Agreements, and because making such contributions without any obligation to do so would have lacked authorization.

156.   The Funds are damaged because they provided full health and other benefits to twenty of the Alleged Site Managers but did not receive contributions for all hours worked, as the Funds' plans expect based on the Agreements.

157.   Benefits provided by the Funds to Exterior Wall's employees benefits Exterior Wall in the same amount because benefits provided by the Funds relieves Exterior Wall from providing the same benefits or equivalent compensation to its employees directly.

158.   If Exterior Wall is correct that the Alleged Site Managers did not perform work covered by the Agreements, Plaintiffs are therefore entitled to equitable restitution from Exterior Wall in the amount by which the benefits provided by the Funds to the Alleged Site Managers exceeded the contributions made, as well as other appropriate equitable relief.

159.   If, on the other hand, Exterior Wall's allegation that the Alleged Site Managers did not perform work covered by the Agreements is incorrect, it owes fringe benefit contributions, dues checkoffs, PAC contributions and other damages in connection with the Alleged Site Managers as set out in this Complaint.

### AS AND FOR A SEVENTEENTH CLAIM FOR RELIEF
### (PLAINTIFFS' CLAIM AGAINST EXTERIOR WALL FOR COMMON LAW FRAUD AND COMMON LAW RESTITUTION)

160.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 159, as if fully set forth herein.

161.    If the Alleged Site Managers did not perform work covered by the Agreements then Exterior Wall fraudulently misrepresented that the Alleged Site Managers performed covered work by making years of contributions in connection with the Alleged Site Managers' work.   In reliance on these representations, the Funds provided benefits to the Alleged Site Managers for $622,994.38 less than the Funds would have been entitled to receive absent the misrepresentation.

162.    If the Alleged Site Managers did not perform work covered by the Agreements then the Funds are entitled to the greater of $622,994.38 or the amount by which the benefits provided by the Funds to the Alleged Site Managers exceeded the contributions made during the April 1, 2011 through September 30, 2014 audited period, plus appropriate interest from Exterior Wall.

### AS AND FOR A EIGHTEENTH CLAIM FOR RELIEF
### (PLAINTIFFS' CLAIM AGAINST EXTERIOR WALL FOR PUNITIVE DAMAGES)

163.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 162, as if fully set forth herein.

164.    An employer's contribution to a joint employer-employee sponsored benefit fund is improper under Section 302(a) of the Labor Management Relations Act if it does not meet the trust fund exception under Section 302(c)(5) of the Labor Management Relations Act.

165.    If Exterior Wall contributed to the Funds in connection with the Alleged Site

Managers "for benefit purposes only" and not because these employees were engaged in covered employment, then Exterior Wall deliberately and systematically defrauded the Funds for profit, as it manipulated the amount of its contributions in order to induce the Funds to provide artificially low-cost health coverage and other benefits to employees not engaged in covered employment.

166.   If Exterior Wall contributed to the Funds in connection with the Alleged Site Managers without a contractual basis to do so then Exterior Wall's conduct evinces total indifference to its civil obligation to contribute to the Funds in conformity with the Agreements.

167.   Exterior Wall's conduct must be sanctioned in order to prevent the Defendants and similarly situated companies from undermining employee benefit plans by diverting benefits to ineligible employees.

168.   Plaintiffs are therefore entitled to punitive damages in the amount of at least twice the damage to the Funds caused by Exterior Wall.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Exterior Wall:

    a)    for an Order requiring Exterior Wall to post a bond in the amount of $1,258,910.42 guaranteeing the payment of fringe benefit contributions owed under the Agreements;

WHEREFORE, Plaintiffs demand judgment against the Defendant Corporations jointly and severally:

    b)    for payment of delinquent fringe benefit contributions in the amount of $777,747.72 that became due during the audited time period of April 1, 2011 through September 30, 2014;

    c)    for payment of all deducted dues checkoffs and PAC contributions from wages in the amount of $60,529.73 that became due during the audited time period of April 1, 2011 through September 30, 2014;

d)      for payment of audit costs in the amount of $222,954.36;

e)      for interest on all delinquent fringe benefit contributions from the time such contributions were due at the rate set by the Agreements;

f)      for liquidated damages in the amount equal to the interest on the delinquent fringe benefit contributions;

g)      for interest on all unremitted dues checkoffs and PAC contributions at the rate set by C.P.L.R. § 5004;

h)      for Plaintiffs' reasonable costs and attorneys' fees;

i)      for an Order requiring Defendant Corporations to cooperate with the Funds in an audit of the Defendant Corporations' books and records for the time period October 2014 through the present;

j)      for an Order requiring payment of all fringe benefit contributions, dues checkoffs, PAC contributions, liquidated damages, attorneys' fees, audit costs, and interest found due and owing pursuant to an audit of Defendant Corporation's books and records for the period October 2014 through the present;

k)      for an Order permanently enjoining Defendant Corporations, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order, by personal service or otherwise, for so long as they remain obligated to contribute to the Funds, from failing, refusing or neglecting to pay and/or submit the required monetary contributions and/or reports in accordance with the Agreements, and an Order permanently enjoining Defendant Corporations, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from failing to remit dues checkoffs to the Union, for so long as they are obligated to do so pursuant to the Agreements;

l)      for an Order permanently enjoining Defendant Corporations, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of this order, by personal service or otherwise, for so long as they remain obligated to contribute to the Funds, from failing, refusing or neglecting to pay and/or submit the required monetary contributions and/or reports in accordance with ERISA and the Agreements;

31

m)   for the greater of $622,994.38 or the amount by which the benefits provided by the Funds to the Alleged Site Managers exceeded the contributions made, plus appropriate interest and/or other appropriate equitable relief, if the Alleged Site Managers did not perform any work covered by the Agreements; and

n)   for punitive damages in the amount of at least twice the damage to the Funds caused by Exterior Wall, if the Alleged Site Managers did not perform any work covered by the Agreements; and

o)   for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       December 16, 2015

GORLICK, KRAVITZ & LISTHAUS, P.C.
Attorneys for Plaintiffs

By: _____
       Andrew A. Gorlick (AG8707)
       Isaac Glovinsky (IG1790)
       17 State Street, 4th Floor
       New York, New York 10004
       agorlick@gkllaw.com
       iglovinsky@gkllaw.com
       Tel. (212) 269-2500
       Fax (212) 269-2540