UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK, MASON TENDERS
DISTRICT COUNCIL WELFARE FUND,
PENSION FUND, ANNUTITY FUND,
TRAINGING FUND, HEALTH AND SAFTEY
FUND, and DOMINICK GIAMMONA, as
FUNDS' CONTRIBUTIONS/DEFICIENCY
MANAGER,

     Plaintiffs,        15-cv-09807 (PKC)

   -against-          MEMORANDUM
                   AND ORDER


EXTERIOR WALL AND BUILDING
CONSULTANTS, INC., CONSTRUCTION
AND REALTY SERVICES GROUP INC.,
CONSTRUCTION REALTY SAFETY GROUP.,
INC., DOMANI CONSULTING, INC., and
DOMANI INSPECTION SERVICES INC.,

     Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

     Plaintiffs Mason Tenders District Council of Greater New York ("The Union"),

Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund,

Health and Safety Fund ("the Funds"), and Dominick Giammona, as Funds'

Contributions/Deficiency Manager, brought claims against defendants Exterior Wall and

Building Consultants, Inc. ("Exterior Wall"), Construction and Realty Services Group Inc.,

Construction Realty Safety Group Inc., Domani Consulting, Inc., and Domani Inspection

Services, Inc., under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§

1132(a)(3) and 1145, and § 301 of the Labor Management Relations Act of 1947 (the "LMRA"),

29 U.S.C. § 185.  Defendants filed a counterclaim against plaintiffs to recover payments allegedly mistakenly made by Exterior Wall, an employer, to the Funds.  Plaintiffs moved to dismiss this counterclaim.  For reasons to be explained, the motion is granted.

BACKGROUND

Plaintiffs' complaint alleges that defendants violated one or more collective bargaining agreements, the trust agreements of the Funds, the LMRA, and ERISA.  (Compl. at ¶ 2.)  Specifically, the complaint alleges that during the audit period of April 1, 2011 through September 30, 2014, for twenty-two employees of defendants working as Site Safety Mangers and Fire Safety Managers within the jurisdiction of the agreements, rather than contribute to the Funds for all hours worked by these employees, defendants only reported and contributed for sufficient hours to induce the Funds to provide benefits to these employees.  (Id. at ¶¶ 23-26, 29.)  Plaintiffs allege that an audit found that Exterior Wall underreported the number of hours worked by these employees by 24,384 hours, (id. at ¶ 28), and seeks delinquent fringe benefit contributions, (id. at ¶ 60), unremitted dues checkoffs and PAC contributions, (id. at ¶ 74), attorney's fees, (id. at ¶ 79), and audit costs (id. at ¶ 84).

Defendants' counterclaim alleges that these Site Safety Mangers and Fire Safety Managers (the "Managers") were not performing work covered by the collective bargaining agreement, and that the contributions that defendants made to the Funds were made in error.  (Def.'s Counterclaim at ¶ 13.)  Defendants seek the return of these funds.

Defendants further allege that a prior dispute over fringe benefit contributions, dues checkoffs, and PAC contributions between the parties with respect to the Managers arose after the Funds conducted an October 2011 audit of Exterior Wall's books and records for the period July 1, 2006, through March 29, 2011 (the "October 2011 Audit").  (Id. at ¶¶ 8-9.)

Defendants appear to have then maintained the same position that they do now: that the Managers "were not performing covered work and that Exterior Wall made contributions for them because of their continuing Union membership solely to ensure that they could maintain their benefits." (Id. at ¶ 10.) Defendants allege that in May 2012 "Exterior Wall and the Funds came to an amicable resolution regarding monies allegedly owed to the Funds." (Id.) However, Exterior Wall maintained its position regarding its obligation to pay such contributions and continued to make payments to the Funds for the Managers in the same manner as before. (Id. at 11.)

Defendants allege that any amount for which they are liable to the Funds for deficient contributions must be indemnified by the Union, because the Union fraudulently misled them regarding the contributions due under the contract. (Id. at ¶ 19.) Specifically, defendants allege that they were misled "into believing that [they] could make contributions to the Funds solely for the purpose of enabling those Site Safety Managers and Fire Safety Managers, who were also members of the Union, to maintain benefits even though they were not performing covered work." (Id.) Additionally, to the extent that they are liable to the Union, defendants argue that the Funds must indemnify them because "the Funds previously resolved a similar dispute with Defendants by knowingly continuing to accept remittance of contributions on behalf of the Managers despite the fact that they do not perform covered work." (Id. at ¶ 20.)

LEGAL STANDARD

Rule 12(b)(6) requires a pleading, on this motion a counterclaim, to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal

conclusions, which are not entitled to the presumption of truth.  Id.  Instead, the Court must

examine the well-pleaded factual allegations and "determine whether they plausibly give rise to

an entitlement to relief."  Id. at 679.  "Dismissal is appropriate when 'it is clear from the face of

the [pleading], and matters of which the court may take judicial notice, that the [non-movant]'s

claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings

SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86

(2d Cir. 2000)).

DISCUSSION

> I.    Return of the Alleged Overpayments.

While the counterclaim seeks return of payments defendants made to the Funds

under Section 302 of the LMRA, such relief is not available under that statute.  See Xin Wei Lin

v. Chinese Staff & Workers' Ass'n, 527 F. App'x 83, 87 (2d Cir. 2013) (pursuant to 29 U.S.C. §

186(e), federal courts lack jurisdiction to award money damages for violations of §§ 186(a) and

(b)) (summary order).  While defendants argue that this prohibition on money damages does not

extend to restitution, cases cited in the Xin Wei Lin summary order explicitly hold that

restitution is also unavailable.  See id. (citing McCaffrey v. Rex Motor Transp., Inc., 672 F.2d

246, 250 (1st Cir. 1982) ("It is well settled in this Circuit that district courts do not have

jurisdiction under § 302(e) to award damages or restitution.")).  ERISA is the proper medium for

the return of such funds.

Under Section 403(c) of ERISA, "the assets of a plan shall never inure to the

benefit of any employer," except under specific, enumerated circumstances.  29 U.S.C. §

1103(c).  One of these exceptions permits plan administrators to return contributions to the

employer "within 6 months after the plan administrator determines that the contribution was

made" by "a mistake of fact or law." 29 U.S.C. § 1103(c)(2)(A)(ii).  Second Circuit precedent

emphasizes the "permissive" nature of this statutory language.  Dumac Forestry Servs., Inc. v.

Int'l Bhd. of Elec. Workers, 814 F.2d 79, 82 (2d Cir. 1987).  "[T]he statute neither commands

nor precludes the payment of refunds; it merely permits the return of contributions mistakenly

made."  Id. (emphasis and internal quotation marks omitted).

Because "ERISA does not require a fund to refund overpayments," but rather

permits a fund "to do so in accordance with its own policy," Brown v. Health Care & Ret. Corp.

of Am., 25 F.3d 90, 93 (2d Cir. 1994), a district court's role is limited to evaluating whether such

refund policy is arbitrary and capricious.  See id. at 94; Frank L. Ciminelli Constr. Co. v. Buffalo

Laborers Supplemental Unemployment Benefit Fund, 976 F.2d 834, 835 (2d Cir. 1992); Dumac,

814 F.2d at 82.  Further, an employer that demonstrates that a fund's refund policy is arbitrary

and capricious must also "establish that the equities favor restitution."  Dumac, 814 F.2d at 83

("A principal equitable consideration is whether restitution would undermine the financial

stability of the plan."); Brown, 25 F.3d at 94 (a successful plaintiff would be "required to show

that the Fund's refund policy was arbitrary and capricious, that the equities favored restitution,

and what the effect of the setoff was upon individual beneficiaries to whom the Fund had

incurred and discharged financial responsibilities by reason of the overpayments").

A district court's review of a fund's administrative decisions regarding the refund

of overpayments is "limited," as "Congress evidently believed that the risk of mistaken

contributions should rest largely with the employer."  Ciminelli, 976 F.2d at 836.  Such a limited

review necessarily requires that the employer request a refund from the fund, and that the request

be denied.  See id. at 835-36; Dumac, 814 F.2d at 80-81.  District Courts within this Circuit have

dismissed actions brought by employers against funds seeking the refund of overpayments on the

grounds that the employer made no allegation in the complaint that a demand was made upon the fund for a return of the overpayment.  See Bricklayers & Allied Craftworkers Local 2, Albany v. C.G. Yantch, Inc., 316 F. Supp. 2d 130, 152 (N.D.N.Y. 2003); Heffernan v. iCare Mgmt., LLC, 356 F. Supp. 2d 141, 156 (D. Conn. 2005) ("The Employers' claim for recovery of overpayments or setoff fails because the Employers do not allege that the Funds' overpayment collection policies are arbitrary and capricious; indeed, the Employers admit that they have not yet availed themselves of these policies.")

The Second Circuit has held that the same standard applies in cases where an employer alleges overpayment to a fund only after the fund itself brings a lawsuit against the employer for alleged underpayment.  Brown, 25 F.3d at 94.  Precedent thus does not support the defendants' argument that it should be excused from the requirement that it first demand a refund from the fund before bringing a lawsuit.

This barrier is not merely a function of judicial efficiency or administrative convenience.  Under the law of the Circuit, this Court is limited to a review of a fund's decision to not reimburse an employer for overpayment.  No request by the employer has been alleged, and thus the Funds could not have acted in an arbitrary and capricious manner in denying the request.  Plaintiffs' motion to dismiss defendants' counterclaim seeking the return of alleged overpayments to the funds is granted.

II.     Indemnification.

Defendants also brings counterclaims against the Union to indemnify defendants' potential liability to the Funds, and against the Funds to indemnify defendants' potential liability to the Union.  The counterclaim does not state the legal basis for these claims.  Defendants raise several legal theories in their opposition to plaintiffs' motion to dismiss.

Defendants argue that an implied cause of action for indemnity exists under ERISA, though they cite no precedent supporting this position. (Def.'s Mem. in Opp., February 28, 2017, Dkt. 69 at 14.) Next, defendants appear to argue that the Court may require indemnification through its equitable powers, citing New York state court decisions. However, other than stating basic principles of indemnity, restitution, and unjust enrichment, defendants do not provide any precedent supporting this contention or explain how the Court could use its equitable powers to order indemnification. (Id. at 14-15.) Lastly, defendants' opposition to plaintiffs' motion to dismiss argues that indemnification is an appropriate remedy for a claim of fraudulent inducement under New York law. (Id. at 15.) While acknowledging that defendants have no contractual indemnity to either the Union or the Funds, defendants argue that "Plaintiffs fraudulently induced Defendants to remit contributions to the Funds for the Safety Managers' performance of non-covered work," giving rise to implied indemnity. (Id. at 13.)

The counterclaim fails to state a claim for fraud under New York law, which requires a plaintiff to assert "a representation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission and injury." Connaughton v. Chipotle Mexican Grill, Inc., No. 46, 2017 N.Y. LEXIS 1217 at *6 (N.Y. May 2, 2017). When a complaint alleges fraud or mistake, Rule 9(b), Fed. R. Civ. P., requires the complaint to "state with particularity the circumstances constituting fraud or mistake." This standard applies to claims brought under state law. See Atlanta Shipping Corp. v. Chem. Bank, 818 F.2d 240, 251 (2d Cir. 1987) (plaintiff bringing claim under New York state law prohibiting fraudulent conveyances required to plead the requisite mental state with particularity pursuant to Rule 9(b)).

Defendants allege that it was their "understanding" that the Managers could "maintain their benefits despite the fact that they were not performing work covered by any collective bargaining agreement" so long as defendants made contributions to the Funds for this purpose that were not "contractually due." (Def.'s Counterclaim at ¶¶ 6, 9.) However, as a result of the October 2011 audit, the Funds alleged that Exterior Wall failed to make contractually due fringe benefit contributions, dues checkoffs, and PAC contributions for the Managers. (Id. at ¶ 8.) Exterior Wall disputed that it was required to make these contributions under the contract based on its above-described understanding. (Id. at ¶ 9.) Defendants allege that the parties settled their dispute and that Exterior wall never deviated from its understanding regarding its contributions made on behalf of the Managers. (Id. at ¶ 10.) Based on its "past practice," and "discussions with Plaintiffs during the 2011 audit settlement negotiations," defendants continued to make contributions on behalf of the Managers only in the amount necessary to continue their coverage. (Id. at ¶ 11.)

Presumably, the alleged false statement on which defendants base their claim for fraud is that someone told defendants that they were contractually permitted to make payments to the Funds, in less than the full amount that would need be paid if the Managers were engaged in covered work, but in an amount sufficient to maintain the Managers' coverage. However, beyond stating that defendants had an "understanding" and that something was said by someone during settlement negotiations in 2011, what was said, and by whom, is not clear from the counterclaim. For what purpose such statements were made, and whether defendants were justified in relying on any such statements, is even less clear. Because defendants have failed to allege the elements of fraud, let alone allege them with particularity as required by Rule 9(b),

Fed. R. Civ. P., defendants' claims for indemnification, insofar as they can be construed as claims for fraud, must be dismissed.

None of defendants' other theories provide a legal basis for the Court to grant the requested indemnification.

CONCLUSION

Defendants' counterclaim having failed to state a claim upon which relief could be granted, plaintiffs' motion to dismiss (Dkt. 60) is GRANTED. The Clerk of the Court is directed to terminate the motion.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 13, 2017